IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CENTRAL LABORERS' PENSION,
WELFARE AND ANNUITY FUNDS,**

**Plaintiffs,**

v.

**BLAND'S SEWER & WATER, INC.,
And DANNY J. BLAND, individually,**

**Defendants.** No. 09-553-DRH

## ORDER

**HERNDON, Chief Judge:**

Defendant Danny Bland is no stranger to being involved in litigation with plaintiffs Central Laborers' Pension, Welfare and Annuity Funds for failure to allegedly pay required fringe benefit contributions and turn in required reports. This case represents the fourth time that either Bland or one his companies, here, defendant Bland's Sewer & Water, Inc. (Bland's Sewer), has been sued by plaintiffs for failure to make the required contributions or turn in required reports. The last case (07-cv-252) between these parties resulted in a settlement and Bland and Bland's Sewer now claim in their motions for summary judgment that this current suit is barred by the settlement agreement entered into between the parties and by the doctrine of res judicata. For the reasons that follow, the Court grants Bland's and Bland's Sewer's motions for summary judgment (Docs. 31 & 32) in part and

denies in part.

## I. Background

The lawsuits against Bland's companies stem back to February 17, 2004, when plaintiffs filed suit against two of Bland's companies, Paradise Environmental Services, Inc. (Paradise) (04-cv-104) and Bland Construction Co., Inc. (Bland Construction) (04-cv-105), under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* (ERISA). Plaintiffs alleged generally that Paradise and Bland Construction failed to make fringe benefit contributions to plaintiffs required by various agreements entered into between plaintiffs and Paradise and Bland Construction. Default judgment was entered in favor of plaintiffs and against Paradise in the amount of $61,900.07 (Doc. 31, 04-cv-104) and against Bland Construction in the amount of $34,978.87 (Doc. 15, 04-cv-105). The collection of those judgments, however, became another issue and carried over into future litigation between Bland and his companies and plaintiffs.

The plaintiffs next lawsuit against Bland was filed on April 10, 2007 (07-cv-252) (the prior litigation). That complaint (Doc. 2, 07-cv-252) was filed against Bland's Sewer and Bland (collectively defendants) alleging three counts. Count I was against Bland's Sewer and alleged Bland's Sewer was obligated to make fringe benefit contributions to plaintiffs under the various agreements entered into between Bland's Sewer and plaintiffs, that according to the trust agreements between the parties, plaintiffs are entitled to collect liquidated damages on all contributions that are paid late, and that based "[u]pon careful review of all records maintained by plaintiffs

there is a total of [$4,577.03] known to be due and owing from defendant to plaintiffs." The complaint further alleged that "there is a possibility that additional contributions and liquidated damages will come due during the pendency of this lawsuit," and that an audit of defendant's payroll records and books was necessary to determine the amounts due and owing. The count referred the Court to plaintiffs' attached exhibit eight. That exhibit showed the audit liabilities of Bland Construction due between January 1, 2001, and June 30, 2004, and liquidated damages due, totaling $34,783.87, the amount that plaintiffs claimed Bland Construction still owed on the prior default judgment entered against Brand Construction. It also included a page entitled new delinquencies for Bland Construction that was dated November 15, 2005. That page showed liquidated damages allegedly due plaintiffs from dates ranging from September 2003 through October 2006, the total of which came to $4,577.03.

Count II was also against Bland's Sewer and alleged that Bland's Sewer was the alter-ego to Bland Construction, and/or its successor corporation, and was therefore liable for the outstanding $34,783.87 judgment balance owed to plaintiffs from the $34,978.87 judgment mentioned above. Count III was brought against Bland individually, seeking to hold Bland personally liable for the actions alleged in count I.

Defendants answered the complaint and a discovery schedule was set, but the case was eventually dismissed after the parties filed a joint motion to dismiss, advising the Court that a settlement had been reached. (Doc. 19). On March 31,

2008, the Court entered judgment dismissing the case with prejudice (Doc. 20, 07-cv-252).

The settlement agreement, dated December 3, 2007, provided, in relevant part, that Bland, Bland's Sewer, and Paradise (collectively the Bland Parties) shall pay plaintiffs the sum of $42,000 within seven days of the agreement. Furthermore, the agreement contained the following relevant provisions:

> "     4.     Subject to the payment described in paragraph 1 hereof and except as otherwise provided in paragraph 5 hereof, [plaintiffs] hereby release and forever discharge the Bland Parties . . . of and from any and every claim, demand, cause of action or suit of any character or description whatsoever relating to or arising out of any claim against or liability or obligation of Paradise or Bland's Construction Co., Inc. ("Bland's Construction") or any order or judgment entered in the Paradise Case [04-cv-104] or [the] Bland Case [07-cv-252]. Except as otherwise provided in paragraph 5 hereof, the foregoing is intended as a general release of the Bland Parties and shall forever release and discharge all claims of any character or description whatsoever in favor of [plaintiffs] and against any one or more of the Bland Parties that relate in any way to any one or more of the Bland Parties, Bland's Construction or Paradise, including (without limitation) any claim that has been or could be asserted in the Litigation.[1]
>      5.     Excluding unpaid contributions and related liabilties **specifically** alleged in [plainitffs'] complaint in the Bland Case (liability for which is hereby released and discharged), [plaintiffs] reserve the right to recover from Bland Sewer for any delinquent and unpaid employer contributions for the period beginning December 1, 2005 through September 1, 2007, and consistent with the agreements executed by Bland Sewer with the various entities covered by the Central Laborers Pension, Welfare and Annuity Funds **prospectively**, and so long as Bland Sewer is bound by the terms and conditions of the agreements executed by

---

[1]The "Litigation" referred to here is the Bland Case, 07-cv-252, and the Paradise case, 04-cv-104.

it." (Doc. 42-3) (Emphasis in original).

The settlement agreement then set forth how and when an audit of Bland Sewer's payroll records and books would be conducted for the time period beginning December 1, 2005, through September 1, 2007, "to determine what amount, if any, is due and owing to [plaintiffs] as delinquent contributions, and any and all other damages that reasonably flow from same, of which [plaintiffs] are entitled to collect." (Doc. 42-3). It then provided the procedures for Bland's Sewer to follow should it decide to challenge the results of the audit. The agreement stated in bold: **"In the event a dispute arises as to the [sic] whether any disputed amounts are subject to collection by [plaintiffs], the parties shall submit same to a court of competent jurisdiction for adjudication."** (Doc. 42-3).

On June 26, 2008, Kevin W. Bragee, a certified public accountant, sent a letter to plaintiffs entitled "Independent Accountant's Report on Applying Agreed-Upon Procedures." (Doc. 34-4). As a result of the procedures performed, Bragee found that additional contributions were due in the amount of $123.27 for the time period of December 1, 2005, through December 31, 2007.

On September 16, 2008, plaintiffs' counsel sent defendants' counsel a letter stating the following:

> "       Enclosed please find a copy of the completed audit and all corresponding documents to same. Please also find a revised breakdown of amounts due and owing delineating the audit liabilities due and owing, along with newly discovered liquidated damages, all of which were not included or contemplated in our most recent settlement of the prior claims against Dan Bland, et

al. As you can see, there are contributions and liquidated damages due and owing to [plaintiffs] totaling $7,707.87. Additionally, attorneys' fees and costs incurred by my clients, to date, total $895.50.

Based on the agreement(s) signed by Mr. Bland, including the settlement agreement in the Paradise & Bland Construction matter Mr. Bland owes [plaintiffs] $8,603.37. Please forward said amount within ten days of the date of this letter. Please also be advised, Mr. Bland has failed to provide ANY report forms from April 2008 to the present." (Doc. 34-7).

On September 22, 2008, defense counsel responded to the letter, notifying plaintiffs that Bland's Sewer objected to plaintiffs' claim for additional payment based upon three grounds: 1) the audit covered the wrong period as the audit was conducted for the period from September 1, 2005, to December 31, 2007, but it was only supposed to go through September 1, 2007; 2) that there was no basis for the claim of liquidated damages; and 3) that there was no basis in the settlement for the recovery of attorney's fees.

On July 24, 2009, plaintiffs filed their complaint against Bland's Sewer and Bland alleging two counts, one against Bland's Sewer and one against Bland individually.[2] In both counts, plaintiffs alleged that defendants were obligated to make fringe benefit contributions to plaintiffs under the various agreements entered into between defendants and plaintiffs, that according to the trust agreements between the parties, plaintiffs are entitled to collect liquidated damages on all contributions that are paid late, that upon careful review of all records maintained

---

[2]Plaintiffs concede that it mistakenly labeled its count against Bland count III as opposed to count II.

by plaintiffs, there is a total of $8,879.26 known to be due and owing from defendants to plaintiffs, and that there is a possibility that additional contributions and liquidated damages would come due during the pendency of the lawsuit. Plaintiffs also alleged that an audit of Bland's Sewer's payroll records was necessary to determine the amounts due and owing. Plaintiffs referred the Court to exhibit ten which showed audit liabilities due plaintiffs from December 1, 2005, through December 31, 2007, in the amount of $123.27. Those figures were the exact same figures from the audit[3] Bragee conducted. Added to that amount was $12.33 in liquidated damages and $725 for the audit cost, coming to a grand total of $860.60 plaintiffs claimed Bland Sewer owed for audit liabilities. Plaintiffs claimed Bland Sewer also owed liquidated damages totaling $8,018.66 for dates ranging from September 2003 through November 2008.

On November 16, 2009, defendants filed their answers to the complaint (Docs. 9 & 10). On June 1, 2010, Bland's Sewer filed a motion for leave to amend its answer (Doc. 26). On August 20, 2010, the Court granted that motion, ordering Bland's Sewer to electronically file its amended answer by August 25, 2010. For whatever reason, no amended answer was ever filed, and on October 19, 2010,

---

[3]The Court uses the term "audit" loosely. In Bragee's letter (Doc. 34-4) to plaintiffs regarding his independent accountant's report on applying agreed upon procedures, Bragee notes that he "was not engaged to, and did not, perform an audit, the objective of which would be the expression of an opinion on the accompanying Statement of Amounts Due Various Funds." Nevertheless, the parties have referred to this as the audit and the Court has chosen to follow their adaptation.

defendants filed motions for summary judgment as to the claims against them (Docs. 31 & 32). The Court will address each of the motions in turn.

## II. Standard of Review

"Summary judgment is appropriate where the evidence shows 'there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 334 (7th Cir. 2011) (citing FED. R. CIV. P. 56(c)(2)). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Johnson*, 635 F.3d at 334 (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Contractual disputes, however, often lend themselves to resolution on summary judgment because a contract's meaning is a matter of law, and where there is no contractual ambiguity, there is no resort to extrinsic evidence and therefore no factual dispute to preclude summary judgment. *Aerospace & Agric. Implement Workers of Am. & Its Local 765*, 102 F.3d 301, 305 (7th Cir. 1996); *Temme v. Bemis Co.*, 622 F.3d 730, 734 (7th Cir. 2010). Still, "[s]ummary judgment is not warranted when there are genuine issues of material fact with respect to the interpretation of the contract." *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 645 (7th Cir. 2006). The Seventh Circuit reviews this court's summary judgment determinations and contract interpretations de novo as they are

both questions of law.  *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1007 (7th Cir. 2000).

## II. Analysis

*A. Bland's motion for summary judgment*

In Bland's motion for summary judgment (Doc. 31), Bland claims that he is entitled to judgment as a matter of law because all claims against him were previously released in a settlement between the parties in the prior litigation and because the judgment in the prior action bars plaintiffs' cause of action under the doctrine of res judicata.  Plaintiffs respond by contending that "[t]he prior litigation and settlement . . . referenced in Bland's [m]otion for [s]ummary [j]udgment did not account for, or release him from newly discovered liabilities due the funds.  Thus, the doctrine of res judicata is inapplicable in the instant action."  (Doc. 40).

Since this case was brought pursuant to ERISA, federal common law principles would normally govern.  *GCIU Emp'r Ret. Fund v. Chi. Tribune Co.*, 66 F.3d 862, 864-65 (7th Cir. 1995).  The motions for summary judgment that are the subject of this order, however, relate to the settlement agreement entered into by the parties.  Settlement agreements are a particular kind of contract, and contracts are interpreted according to the law of the jurisdiction in which the contract was created.  *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008).  Thus, typically the law of Illinois would govern and Illinois courts generally adhere to a contract's choice of law provisions so long as the contract is valid and does contradict Illinois's fundamental public policy.  *Sound of Music Co. v. Minn. Mining*

& *Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007); *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004). Here, the settlement agreement itself provides that the agreement shall be interpreted according to "[f]ederal [l]aw and the [l]aws of the State of Illinois." The agreement further provides that "[i]n the event of a conflict between [f]ederal and Illinois [l]aw, [f]ederal [l]aw shall control on the matter in dispute."

In their briefs, neither party mentions the agreement's choice of law provisions. Nevertheless, defendants assert that the Court should follow the "four corners" rule of Illinois contract interpretation. See *Lease Mgmt. Equip. Corp. v. DFO P'ship*, 392 Ill. App. 3d 678, (Ill. App. Ct. 2009) ("In determining whether an ambiguity exists, the court applies the 'four corners rule' and looks to the language of the agreement alone."). Plaintiffs do not contest that the "four corners" rule is followed under Illinois state law, but contend that "[f]ederal common law principles of contract interpretation govern and require the agreements executed by defendants, and the declaration of trusts, by giving the terms of the agreements its ordinary meaning." Thus, plaintiffs argue that "the course of conduct of the parties clearly demonstrates that the Settlement Agreement did not and does not supersede the various other agreements executed by defendants." Because the Court finds that the same result would be reached by applying federal or Illinois law and because the settlement agreement provides that federal law shall govern if it conflicts with Illinois law, the Court will apply federal law.

When applying the federal common law rules of contract interpretation,

the Court must first determine whether the clause of the contract at issue is ambiguous. *Funeral Fin. Sys. v. United States*, 234 F.3d 1015, 1018 (7th Cir. 2000). "The language of a contract is ambiguous if a section of that contract 'is subject to reasonable alternative interpretations.'" *Id.* (quoting *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 420 (7th Cir. 1998)). Under the federal common law rules of contract interpretation, the Court interprets "the settlement agreement 'in an ordinary and popular sense as would a person of average intelligence.'" *United States v. Rand Motors*, 305 F.3d 770, 774 (7th Cir. 2002) (quoting *Grun*, 163 F.3d at 420). In doing so, the Court attempts to construe a contract to give the full intention of the parties by applying an objective standard of reasonableness to determine the meaning of the settlement agreement. *Rand Motors*, 305 F.3d at 774. "If a contract is not open to any other reasonable interpretations, and is therefore unambiguous, then the written words of the contract must dictate the disposition of a dispute involving the contract." *Funeral Fin. Sys.*, 234 F.3d at 1018. "Extrinsic evidence should not be used where the contract is unambiguous." *Chi. Tribute Co.*, 66 F.3d at 865. "When the language of an unambiguous contract 'provides an answer, then the inquiry is over.'" *Funeral Fin. Sys.*, 234 F.3d at 1018 (quoting *Grun*, 163 F.3d at 420).

Here, the Court finds no ambiguity exists in part of the agreement that relates to Brand. With regard to Bland specifically, the settlement agreement provides that "[plaintiffs] hereby release and forever discharge the Bland Parties . . . of and from any and every claim, demand, cause of action or suit of any character

or description whatsoever relating to or arising out of any claim against or liability or obligation of Paradise or [Bland's Construction] or any order or judgment entered in the Paradise Case [04-cv-104] or Bland Case [07-cv-252]." The next sentence then clarifies this by stating, "Except as otherwise provided in paragraph 5 hereof, the foregoing is intended as a general release of the Bland Parties and shall forever release and discharge all claims of any character or description whatsoever in favor of [plaintiffs] and against any one or more of the Bland Parties that relate in any way to any one or more of the Bland Parties, Bland's Construction or Paradise, including (without limitation) any claim that has been or could be asserted in the Litigation." Paragraph five then sets forth, in relevant part, the following:

> "5. Excluding unpaid contributions and related liabilities **specifically** alleged in [p]laintiffs'] complaint in the Bland Case (liability for which is hereby released and discharged), [plaintiffs] reserve the right to recover from Bland Sewer for any delinquent and unpaid employer contributions for the period beginning December 1, 2005 through September 1, 2007, and consistent with the agreements executed by Bland Sewer with the various entities covered by [plaintiffs] **prospectively**, and so long as Bland Sewer is bound by the terms and conditions of the agreements executed by it." (Emphasis in original).

Based upon the Court's reading of the settlement agreement there is but one reasonable interpretation of the above provision: that Bland is released and forever discharged from any claims against or liability or obligation of Paradise or Bland's Construction or from any claims brought or that could have been brought in the prior litigation between the parties (07-cv-252). In the prior litigation, plaintiffs sued for $34,783.87, the amount it claimed Bland Construction still owed plaintiffs

from the default judgment entered against Bland Construction in case number 04-cv-105, and for liquidated damages in the amount of $4,577.03 for time periods ranging from September 2003 through October 2006.[4] In this case, plaintiffs base their cause of action on the audit that Bragee conducted with regard to Bland's Sewer, on the same liquidated damages claims[5] that it made in the prior litigation, and on additional liquidated damages claims in the amount of $3,705.47 for dates ranging from November 2006 through November 2008.

Here, paragraph four specifically released Bland "from any claim, demand, cause of action or suit of any character or description whatsoever relating to or arising out of any claim against or liability or obligation of . . . [Bland's Construction] or any order or judgment entered in the . . . Bland case [07-cv-252]." Thus, the only reasonable interpretation of this clause is that Bland is released from all claims that were settled previously in the prior litigation. The next sentence clarifies this by stating that "[e]xcept as otherwise provided in paragraph 5," which does not apply to Bland, "the foregoing is intended as a general release of [Bland] and shall forever release and discharge all claims of any character or description whatsoever in favor of [plaintiffs] and against any one or more of the Bland Parties

---

[4]In fact, the page plaintiffs attached alleging the liquidated damages due in that case against Bland's Sewer bore Bland's Construction's name (Doc. 2-9, 07-cv-252), but in that case plaintiffs alleged that Bland's Sewer was the alter-ego of Bland's Construction and/or the successor corporation.

[5]Plaintiffs do not claim liquidated damages in this case for December 2003 ($97.92) and for February 2006 ($165.92) but it made those claims in the prior litigation.

that relate in any way to any one or more of the Bland Parties, Bland's Construction or Paradise, including (without limitation any claim that has been or could be asserted in the Litigation." Thus, the Court interprets the settlement agreement to unambiguously release Bland from every claim that could have been brought in the prior litigation. This is further supported by the fact that plaintiffs specifically reserved the right to recover from Bland Sewer for any delinquent and unpaid employer contributions for the period beginning December 1, 2005, through September 1, 2007, yet did not make any reservations with regard to Bland. Thus, plaintiffs are precluded from bringing all claims against Bland that could have been brought in the prior litigation.

Despite this, the Court finds that a question of material fact exists as to what claims could have been brought in the prior litigation and finds that the settlement is ambiguous as to whether plaintiffs are precluded from seeking recovery for those claims that could not have brought in the prior litigation. Thus, the Court grants summary judgment in favor of Bland with regard to all claims that could have been brought in the prior litigation and denies summary judgment with regard to those claims that could not have been brought in the prior litigation.

With regard to Bland's Sewer's contention that summary judgment should be granted to him because the doctrine of res judicata applies, the Court finds that res judicata applies in part and would only bar the claims that the Court has already determined are barred by the settlement agreement. "To determine whether res judicata applies, [the Court applies] the preclusion law of Illinois, the state that

rendered the judgment." *Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011). In Illinois, "[r]es judicata applies when '(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies.'" *Arlin-Golf, LLC*, 631 F.3d at 821 (quoting *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001)). Here, there is no question that the first and third requirements have been met. At issue is whether the second requirement has also been met.

"To determine whether the second requirement is met, Illinois employs a transactional test:

> [S]eparate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief . . . . [T]he transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction."

*Arlin-Golf, LLC*, 631 F.3d at 821 (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998)). Here, the liquidated damages claims brought in the prior litigation, i.e., for the time period of September 2003 through October 2006, would be precluded by res judicata, but the claims arising out of different transactions, i.e., the failure to pay contributions in subsequent months would not be barred because they are based on new transactions. Furthermore, it appears that the claim based upon the audit liabilities owed as a result of Bragee's audit would also be barred but the Court need not decide whether those claims would be barred

because the Court already found those claims to be barred by the settlement agreement.

Thus, because the settlement agreement unambiguously releases Bland from all claims that could have been brought in the prior litigation, Bland's summary judgment motion is granted in part with regard to those claims. The settlement agreement is ambiguous, however, as to whether the parties intended to release Bland from any subsequent claims that could not have been brought in the prior litigation. Accordingly, Bland's motion is denied in part with regard to those claims.

*B. Bland's Sewer's motion for summary judgment*

Bland's Sewer claims in its motion for summary judgment that plaintiffs recovery against Bland's Sewer cannot exceed $123.27 based on the following undisputed facts: 1) the settlement agreement releases Bland's Sewer from all claims asserted in count I except for unpaid employer contributions in the amount of $123.37 as determined by plaintiffs' audit; 2) the settlement agreement releases Bland's Sewer from all claims for liquidated damages during the period covered by the audit; 3) plaintiffs have sustained no damages resulting from Bland Sewer's alleged unpaid employer contributions during the period covered by the settlement agreement; 4) plaintiffs failure to comply with the settlement agreement by providing Bland Sewer's with notice of their decision, if any, with respect to Bland Sewer's objection to their claim bars recovery; and 5) the judgment in the prior action bars plaintiffs' cause of action under the doctrine of res judicata. Plaintiffs contend that the prior litigation and settlement did not account for, or release it from newly

discovered liabilities due plaintiffs. Further, plaintiffs argue that Bland's Sewer was not released from the continued obligations under the agreements executed between the parties.

Here, again the Court finds that the settlement agreement is unambiguous in part. This time, however, the Court finds that plaintiffs specifically reserved the right to sue Bland's Sewer for the right to recover delinquent and unpaid employer contributions for the period beginning December 1, 2005, through September 1, 2007, and for any claims that occurred after September 1, 2007.

The settlement agreement provides that "[plaintiffs] hereby release and forever discharge [Bland's Sewer] . . . of and from any and every claim, demand, cause of action or suit of any character or description whatsoever relating to or arising out of any claim against or liability or obligation of . . . any order or judgment entered in the . . . Bland Case [07-cv-252]." The next sentence then clarifies the release by stating, "Except as otherwise provided in paragraph 5 hereof, the foregoing is intended as a general release of [Bland's Sewer] and shall forever release and discharge all claims of any character or description whatsoever in favor of [plaintiffs] and against any one or more of the Bland Parties that relate in any way to any one or more of the Bland Parties, Bland's Construction or Paradise, including (without limitation) any claim that has been or could be asserted in the Litigation."

Paragraph five then provides the following:

> "5. Excluding unpaid contributions and related liabilities **specifically** alleged in [plaintiffs'] complaint in the Bland Case (liability for which is hereby released and

> discharged), [plaintiffs] reserve the right to recover from Bland Sewer for any delinquent and unpaid employer contributions from the period beginning December 1, 2005, through September 1, 2007, and consistent with the agreements executed by Bland Sewer with the various entities covered by [plaintiffs] **prospectively**, and so long as Bland Sewer is bound by the terms and conditions of the agreements executed by it." (Emphasis in original).

Here, plaintiffs specifically sought liabilities from December 1, 2005, through December 31, 2007, the time period for which Bragee conducted the audit. Paragraph five, however, explicitly provides that plaintiffs "reserve the right to recover from Bland['s] Sewer for any delinquent and unpaid employer contributions from the period beginning December 1, 2005, through September 1, 2007, and . . . **prospectively** . . . ." (Emphasis in original). The only reasonable interpretation of this provision is that plaintiffs reserved the right to recover from Bland's Sewer for any delinquent and unpaid contributions from December 1, 2005, and thereafter. Thus, plaintiffs are not barred by the settlement agreement from pursuing the $123.27 in delinquent and unpaid contributions. Nor are they are barred from pursuing the $12.33 in liquidated damages and the $725 in audit costs associated therewith as paragraph five explicitly provides that plaintiffs are entitled to "any and all other damages that reasonably from [the audit], of which [plaintiffs] are entitled to collect." Plaintiffs are, however, precluded from recovering any liabilities specifically alleged in the prior litigation. The first sentence of paragraph five specifically excludes "unpaid contributions and related liabilities **specifically** alleged in [plaintiffs'] complaint in the Bland case." (Emphasis in original). Thus, the

liquidated damages claims made in the prior litigation, i.e., for the time periods September 2003 until October 2006, were specifically alleged in the prior litigation and plaintiffs are precluded from recovering those claims. Furthermore, like the Court found against Bland above, the Court finds that plaintiffs' are barred from pursuing all claims that could have been brought in the prior litigation with the exception of those claims it specifically reserved, i.e., from December 1, 2005 and thereafter. As to those claims that were not specifically alleged and that could not have been brought in the prior litigation, the Court finds the contract ambiguous as to whether the settlement agreement precludes plaintiffs from pursuing those claims. Finally, with regard to Bland's Sewer's claim that res judicata should apply, as analyzed above the Court finds that only those claims that were in fact alleged in the prior litigation would be barred by res judicata and that applying that doctrine any further here will not change the results reached above. Accordingly, the Court declines to consider that doctrine any further.

## IV. Conclusion

For the reasons stated above, the Court grants Bland's motion for summary judgment (Doc. 31) in part and denies it in part. Judgment is entered in favor of Bland for all of plaintiffs' claims that were brought or could have been brought in the prior litigation against Bland. A question of material fact exist as to whether plaintiffs are entitled to pursue the claims that could not have been brought in the prior litigation so that part of the motion is denied. Bland's Sewer's motion for summary judgment (Doc. 32) is also granted in part and denied in part.

Judgment is entered in favor of Bland's Sewer for all claims were brought or could have been brought in the prior litigation with the exception of those claims that plaintiffs specifically reserved, i.e., from December 1, 2005, going forward. Questions of material fact exist as to whether plaintiffs are entitled to pursue the claims that could not have been brought in the prior litigation so that part of the motion is denied.

**IT IS SO ORDERED.**

Signed this 28th day of July, 2011.

Digitally signed by David R. Herndon
Date: 2011.07.28 11:11:01 -05'00'

**Chief Judge
United States District Court**